IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOMERO ALONSO MATA and
CHRISTINE MOLINA, Individually
and as next friend of SERGIO TARANGO,

    Plaintiffs,

vs.                                                Civ. No.  06-1140 JP/RHS

CIRCUIT CITY STORES, INC.,
a Virginia corporation,
THE CITY OF ALBUQUERQUE and
OFFICERS WOOD, DEVOTI and LOPEZ
in their individual and official capacities as
Employees of the City of Albuquerque,

    Defendants.

MEMORANDUM OPINION AND ORDER

On September 6, 2007, Defendant Circuit City Stores, Inc. (Circuit City) filed Defendant Circuit City Stores, Inc.'s Motion for Summary Judgment (Doc. No. 34).  On April 9, 2008, the Court held a Pretrial Conference.  At the Pretrial Conference, David Reynolds and Keith Franchini represented the Plaintiffs; Bruce McDonald represented Circuit City; and Kathryn Levy represented Defendant City of Albuquerque and Defendants Officers Wood, Devoti, and Lopez.  Having considered the briefs, argument of counsel at the Pretrial Conference, and the relevant law, the Court concludes that Circuit City's motion for summary judgment should be denied as to Count I and that Count II should be dismissed with prejudice.

A.  FACTUAL BACKGROUND

This case is based on the alleged unlawful arrests of Plaintiffs Homero Alonso Mata and Christine Molina.  Plaintiff Sergio Tarango is Plaintiff Molina's minor son who was detained at the time of Plaintiff Molina's arrest.

On October 7, 2005, Plaintiffs went to Circuit City to make some purchases. Plaintiff Mata, who speaks only Spanish, decided to buy a Panasonic surround sound system and tendered to the store associate four one hundred dollar bills for the $341.59 purchase. The store associate was concerned that the one hundred dollar bills might be counterfeit so the store associate had Paul Apodaca, the store manager, check the bills. Apodaca determined that the bills were good and told Plaintiff Mata he could pick up the sound system at the loading dock. Plaintiff Mata informed Apodaca that he was going to do some more shopping before picking up the sound system.

When Plaintiff Mata later purchased DVD's totaling $57.06 with a one hundred dollar bill, another store associate contacted Jermiel Thames, a customer service associate with experience in detecting counterfeit money, about a possible counterfeit. In response to the store associate's concerns, Thames observed the Plaintiffs and noted that they were not nervous or in a rush, and that they were just shopping. Thames then actually pulled Plaintiff Mata's money from one of the cash drawers to inspect it and found that the money looked authentic. Plaintiffs also made a purchase at the Verizon kiosk where the cashier checked the money with a counterfeit pen and likewise found that the money was good.

Apodaca subsequently told Thames that he thought the money was "washed"[1] and that some of the faces on the bills were off-center. Thames pointed out to Apodaca that the faces on the bills were not off-center. Thames also responded that the money did not appear washed

---

[1] Counterfeiters will sometimes "wash" a small denomination bill so that the bill can be transformed into a larger denomination.

although a couple of the bills did not have security threads.[2] The bills without a security thread, however, were older bills which were not printed with security threads.

According to Thames, before he could test the suspect bills with a counterfeit pen, Apodaca proceeded to call the emergency 911 telephone number to inform the police that Plaintiff Mata was passing counterfeit money. Apodaca, however, stated in his police report that he used a counterfeit pen on the suspect bills and that the counterfeit pen test appeared to indicate that the bills were fake. Thames asserts that while Apodaca was on the telephone speaking with the 911 operator, he tried to persuade Apodaca that the money was real.

When Officers Wood, Devoti, and Lopez arrived at Circuit City they confiscated five one hundred dollar bills and found several thousand dollars in cash on Plaintiff Mata. Thames immediately told the police officers that the confiscated money was good. A merchandising associate also told the police officers that the money was good. Thames noted that the police officers did not use a counterfeit pen to test the money although one was available and Thames offered the pen to the police officers to use.

Plaintiffs Mata and Molina were subsequently arrested at the store and Officer Lopez detained Plaintiff Tarango. Plaintiffs were taken to the Coronado command center and Plaintiff Molina's car was impounded and towed. A Secret Service agent was then called in who advised the police officers that the money was genuine. Plaintiffs were released at that point and the vehicle was likewise released.

---

[2] Thames mistakenly referred to these threads as magnetic strips in his deposition testimony.

Circuit City has a policy to check twenty dollar bills and larger denomination bills with a counterfeit pen.[3] Thames knew that counterfeiters often make several small purchases with large bills to get a lot of legitimate change back. Circuit City employees were also aware that during the holiday season more fake bills are passed than at other times of the year. Circuit City awards employees with cash bounties for uncovering fraudulent transactions.

Circuit City gave much discretion to Apodaca as a store manager on how to handle the situation that occurred with the Plaintiffs. Nonetheless, store policy, characterized as "general directions," would have advised Apodaca simply to not accept the suspect money and to ask for a different type of payment. Then, the general directions would have had Apodaca call loss prevention and the Secret Service. In fact, there is "no written documentation that [Circuit City] would train [its] managers to call the police." Depo. of Jonathan Utley at 17-18, Ex. 3 (attached to Amended Response). Interestingly, Thames characterized Apodaca as a fairly new store manager.

In support of this motion for summary judgment, Circuit City has produced the expert opinion of Dr. George W. Walker, Sr. who states that it is his expert opinion that Apodaca's decision to call the police "concerning the possible identification of counterfeit U.S. $100 bills was both reasonable and prudent." Expert Opinion Report of Dr. George W. Walker, Sr. (dated June 4, 2007) at 1 (attached to Circuit City's motion for summary judgment).

---

[3]Thames realized that really good counterfeit bills can pass the counterfeit pen test.

B.  PLAINTIFFS' COMPLAINT

   Plaintiffs allege the following counts and claims in this lawsuit:

   1.  Count I:  a negligence claim against Circuit City,

   2.  Count II:  a *prima facie* tort claim against Circuit City,

   3.  Count III: a false arrest and imprisonment claim against the City of Albuquerque brought under the New Mexico Tort Claims Act, and

   4.  Count IV: Fourth Amendment unreasonable seizure claims against Officers Wood, Devoti, and Lopez brought under 42 U.S.C. §1983.

Circuit City moves for summary judgment as to Counts I and II thereby seeking dismissal of all of the Plaintiffs' claims against Circuit City.

C.  STANDARD OF REVIEW

   Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939

F.2d at 891.

D. DISCUSSION

    1. Count I: The Negligence Claim

Circuit City contends first that it is entitled to summary judgment on the negligence claim brought against it in Count I of the complaint. Circuit City specifically argues that it did not owe any duty towards Plaintiffs. In the alternative, Circuit City argues that if it did owe a duty towards Plaintiffs, Circuit City did not breach that duty.

      a. Duty

Circuit City asserts that it did not owe Plaintiffs a duty of care because Apodaca was simply carrying out his civic duty to report his concern regarding counterfeiting to the police. Whether a defendant owes a duty of care to a plaintiff is usually a question of law. *Solon v. WEK Drilling Co., Inc.*, 113 N.M. 566, 571, 829 P.2d 645, 650 (1992). However, in some cases, the issue of whether a duty is owed is a mixed question of law and fact. *Ryan v. New Mexico State Highway and Transp. Dept.*, 1998-NMCA-116 ¶6, 125 N.M. 588, *cert. denied*, No. 25,257 (1998).

Generally, "[e]very person has a duty to exercise ordinary care for the safety of the person and the property of others." UJI 13-1604 NMRA 1998. Even so, "[t]he determination of duty in any given situation involves an analysis of the relationship of the parties, the plaintiff's injured interests and the defendant's conduct; it is essentially a policy decision based on these factors that the plaintiff's interests are entitled to protection." *Calkins v. Cox Estates*, 110 N.M. 59, 63, 792 P.2d 36, 40 (1990). Determining duty is also "based in part on whether the injury to the plaintiff was foreseeable." *Blake v. Public Service Co. of New Mexico*, 2004-NMCA-002 ¶7, 134 N.M. 789, *cert. dismissed*, No. 28, 383 (2004). *See also* UJI 13-1603 NMRA 1998 ("As the

6

risk of danger that should be reasonably foreseen increases, the amount of care required also increases.").

As an initial matter, the Court recognizes Plaintiffs' concern that the Uniform Jury Instruction's (UJI) mandate that "[e]very person has a duty to exercise ordinary care" appears to conflict with New Mexico common law which requires a policy decision to determine if a person is entitled to protection under a negligence theory. The Court, however, concludes that the issue of duty under the circumstances of this particular case is best described by a combination of both New Mexico common law and the negligence UJI's.[4]

In addressing the policy factor required in New Mexico common law, Circuit City cites to *LaFontaine v. Family Drug Stores, Inc.*, 33 Conn. Supp. 66, 360 A.2d 899 (Conn. Com. Pl. 1976) in support of its argument that it did not owe Plaintiffs a duty in this case. In *LaFontaine*, a pharmacist called the police to his store upon the mistaken but honest belief that plaintiff was going to purchase a controlled drug using a forged prescription. The court in *LaFontaine* noted that "there may be a duty on the part of a citizen to use reasonable care to ascertain the true facts when he insists upon, demands or pressures the police to make an arrest." 360 A.2d at 903-04. "In those circumstances, conjecture or suspicion is insufficient and sincere belief must be based on circumstances which make it reasonable." *Id*. at 904. In this case, it does not appear that Apodaca insisted, demanded or pressured the police to make an arrest. That was also the situation in *LaFontaine*.

---

[4]The preface of the UJI's states that the trial court can deviate from the UJI's if "under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper, and the trial court so finds and states of record its reason." UJI 1-051(D) NMRA 1998.

The *LaFontaine* court then quoted the *Restatement*, 3 Torts §653, comment g:

> Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in the Section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain.

*Id*. The court went on to explain:

> The rule exonerating an honest informer rests on the premise that either (1) there is no duty of reasonable care owed to the person informed against, or (2) there is a privilege or immunity granted to the informer in performing his public responsibility. On either premise, the rule derives from sound public policy that the efficient enforcement of criminal law requires that a private person who renders aid to the police by giving honest, even if mistaken, information about crime should be given effective protection.
>
> To allow an action in negligence to lie against a citizen if he makes an honest mistake in reporting to the police would have a chilling effect on an important source of information about crime. Citizen cooperation is essential to efficient police operation and should not be stifled.

*Id*. at 905 (citations omitted).

The *LaFontaine* court, however, observed that "[t]he honesty and sincerity of the defendant's belief that the plaintiff committed a crime may be vitiated by the presence of malice, as where the defendant sought to use the criminal process for a purpose other than to bring the plaintiff to justice." *Id*. at 904 (citing *Restatement*, 3 Torts §653(1)(a)(ii)). If malice is involved or the informer simply lacks an honest belief that a crime has been committed, *LaFontaine* seems to hold by implication that a citizen has a duty to use reasonable care to ascertain the true facts prior to reporting a crime to the police.

It is important to note that in *Zamora v. Creamland Dairies, Inc.*, 106 N.M. 628, 634-35, 747 P.2d 923, 929-30 (N.M. Ct. App. 1987) the New Mexico Court of Appeals adopted the *LaFontaine* rationale and policy considerations with respect to both malicious prosecution and negligence claims. Consequently, New Mexico courts would apply the policy considerations of

*LaFontaine* and *Zamora* to deny liability if a citizen has an honest but mistaken belief that a crime has been committed when reporting a crime to the police. Conversely, the New Mexico courts would presumably determine that there is a duty to use ordinary care (as required by UJI 13-1604 and defined by UJI 13-1603) to ascertain the true facts before calling the police when there is not an honest belief that a crime has been committed or when malice is involved. The validity of this duty is further buttressed by the foreseeability factor. As the California Supreme Court found in *Pool v. City of Oakland*, 42 Cal. 3d 1051, 1062, 728 P.2d 1163, 1168 (1986), a case involving a wrongful arrest of a customer for counterfeiting, "it was foreseeable that an innocent customer suspected of counterfeiting would be subjected to a police investigation, and perhaps arrested, and would suffer emotional distress as a result."

In applying *LaFontaine* and *Zamora* to this case, Plaintiffs contend that Apodaca was not an honest informer but rather that he acted out of malice towards Mexicans including Plaintiffs. Hence, if Apodaca was not an honest informer and acted out of malice, Apodaca, acting on behalf of Circuit City in his capacity as store manager, would have been required to use ordinary care in ascertaining whether Plaintiff Mata had actually passed counterfeit bills prior to calling the police.[5] To decide if the duty to use ordinary care was present in this case, a factual determination must be made, namely whether Apodaca was an honest informer or whether he acted with malice by calling the police. Plaintiffs have produced evidence that a reasonable juror could construe as indicative of Apodaca not being an honest informer or of his acting with malice. That evidence includes Apodaca's decision to reverse his first finding that Plaintiff

---

[5]"A corporation can act only through its officers and employees. Any act or omission of an officer or an employee of a corporation, within the scope or course of [his] or [her] employment, is the act or omission of the corporation." UJI 13-409 NMRA 1998.

Mata's money was not counterfeit despite Thames's assurances that the money was valid based on the Plaintiffs' conduct, the appearance of the money, and Verizon's acceptance of Plaintiff Mata's money; and Apodaca's failure to use the counterfeit pen on the money prior to calling the police.[6] In addition, Apodaca did not comply with Circuit City's general directions which advised using a counterfeit pen on large bills, refusing suspect money and requesting another method of payment, and notifying the Secret Service and loss prevention of the suspect money.

Plaintiffs also submitted a transcription of the 911 telephone call Apodaca made to the police in which Apodaca purportedly stated in a definitive way: "I've got a Mexican individual in here passing fake hundred dollar bills." 911 Transcript, Ex. 4 at 1(attached to Plaintiffs' Amended Response to Circuit City's Motion for Summary Judgment (Doc. No. 43), filed Jan. 10, 2008). Circuit City objects to the 911 transcript because the person making the transcription produced just "relevant portions" of the call; the unknown name "Justin" was inserted as a speaker; and some clarifying parentheticals were added. *See* Affidavit of Megan R. Devine, Ex. 4 (attached to Plaintiffs' Amended Response). Even without the 911 transcript, the other evidence cited above is sufficient to raise a genuine issue of material fact regarding whether Apodaca was an honest informer or acted out of malice.[7] Since the issue of whether a duty was owed depends, in part, on this factual determination, summary judgment is inappropriate on the negligence claim.

---

[6] Whether Apodaca used a counterfeit pen is itself a factual issue since Apodaca stated in his police report that he used a counterfeit pen.

[7] If Circuit City wants to exclude this 911 transcript, the appropriate avenue for doing so is a motion in limine.

b.  Breach of Duty

Circuit City also argues in the alternative that if it did owe a duty to Plaintiffs it did not breach that duty.  Circuit City bases this argument partly on Dr. Walker's conclusion that Apodaca acted reasonably and prudently.[8]  Dr. Walker explained that it would be reasonable for anyone suspicious of a bill's authenticity to call the police because most lay persons cannot positively identify counterfeit money.

Circuit City also claims that Apodaca acted reasonably in calling the police considering that counterfeit incidents rise prior to the holidays, two different customer service associates were concerned with the authenticity of the money, some of the bills had missing "magnetic strips," some of the faces on the bills seemed off-center, and Apodaca believed the counterfeit pen showed that the money was fake.  Moreover, Circuit City contends that the fact that Apodaca did not rely on Thames's advice regarding the authenticity of the one hundred dollar bills is not significant because Thames is not a counterfeit expert.  Finally, Circuit City notes that counterfeit pens are not always accurate indicators of counterfeit money.

Plaintiffs, on the other hand, correctly contend that the question of breach of duty is a factual issue for the jury to decide.  *Herrera v. Quality Pontiac*, 2003-NMSC-018 ¶33, 134 N.M. 43.  Plaintiffs have presented evidence on which a reasonable juror could rely to find that Apodaca did not use ordinary care in determining whether Plaintiff Mata committed a crime.  That evidence includes Apodaca ignoring Thames's declarations that the money was good although Thames was experienced in detecting counterfeit money; Apodaca claiming that the

---

[8]Circuit City argues that Dr. Walker's opinion is needed to establish the standard of care because the subject matter of counterfeiting is outside the knowledge of an average lay person.  Circuit City notes that in New Mexico experts are used in this way in medical malpractice cases.

11

faces on the bills were off-center when in fact they were not; Apodaca insisting that the money was washed when there was no indication that the money appeared washed; Apodaca failing to use a counterfeit pen as required by the general directions; Apodaca failing to reject the money and ask for an alterative method of payment in contravention of the general directions; and Apodaca failing to telephone the Secret Service prior to calling the police, also in contravention of the general directions and any training Apodaca would have received.

Moreover, Plaintiffs persuasively attack the factual basis for Dr. Walker's opinion. For instance, Dr. Walker was under the impression that Plaintiffs made several small purchases with the one hundred dollar bills when in fact Plaintiffs made only two rather large ones. Also, Dr. Walker apparently referred to a "new money" web site in his report although at least some of the money in this case was older and therefore, did not have security threads. In addition, Plaintiffs observe that Dr. Walker did not speak with Apodaca, Thames, any employee of Circuit City, any Albuquerque Police Department officer, or the Secret Service agent in coming to his conclusion. Dr. Walker also did not have the Circuit City "policies" before him when he made his expert report. Finally, Dr. Walker admitted that a visual inspection of the bills did not reveal anything suspicious.[9]

In sum, the Court concludes that if a duty is established at trial, there are sufficient questions of fact as to the breach of that duty to prevent summary judgment. Summary judgment is, therefore, denied as to Count I.

---

[9]To the extent that Plaintiffs wish to exclude Dr. Walker's expert testimony at trial, Plaintiffs are advised to file a motion in limine to that effect.

2. Count II: the *Prima Facie* Tort Claim

Mr. Reynolds and Mr. Franchini agreed at the Pretrial Conference that if the negligence claim survived summary judgment, then Plaintiffs could not also pursue the *prima facie* tort claim. The idea behind the concept of *prima face* tort "is to provide a remedy for intentionally committed acts that do not fit within the contours of accepted torts...." *Bogle v. Summit Investment Co., LLC*, 2005-NMCA-024 ¶23, 137 N.M. 80. Hence, if a traditional tort like negligence can provide a reasonable remedy for asserted wrongful conduct, there is no need to look to *prima facie* tort. *See id*. at ¶24. Since the Court will allow Plaintiffs' negligence claim to go to trial, the *prima facie* tort claim should be dismissed with prejudice.

IT IS ORDERED that Defendant Circuit City Stores, Inc.'s Motion for Summary Judgment (Doc. No. 34) is denied as to Count I and that Court II will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE